VAN DUSEN, U. S. DISTRICT JUDGE, ET AL. *v.*
BARRACK, ADMINISTRATRIX, ET AL.

Nos. 56 and 80.  Argued January 8–9, 1964.—
Decided March 30, 1964.

*Owen B. Rhoads* argued the cause for petitioners in No. 56. With him on the briefs were *George J. Miller, J. Welles Henderson, Jr., J. Grant McCabe III* and *Sidney L. Wickenhaver.*

*Morton Hollander* argued the cause for petitioners in No. 80. With him on the brief were *Solicitor General Cox* and *Assistant Attorney General Douglas.*

*John R. McConnell* argued the cause for respondents. With him on the brief were *Seymour I. Toll, T. E. Byrne, Jr., Lee S. Kreindler, Abram P. Piwosky, Ralph Earle II, Abraham E. Freedman* and *Milton M. Borowsky.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

This case involves the construction and application of § 1404 (a) of the Judicial Code of 1948. Section 1404 (a), which allows a "change of venue" within the federal judicial system, provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U. S. C. § 1404 (a).

The facts, which need but brief statement here, reveal that the disputed change of venue is set against the background of an alleged mass tort. On October 4, 1960, shortly after departing from a Boston airport, a commercial airliner, scheduled to fly from Boston to Philadelphia, plunged into Boston Harbor. As a result of the crash, over 150 actions for personal injury and wrongful death

have been instituted against the airline, various manu-
facturers, the United States, and, in some cases, the
Massachusetts Port Authority. In most of these actions
the plaintiffs have alleged that the crash resulted from
the defendants' negligence in permitting the aircraft's
engines to ingest some birds. More than 100 actions
were brought in the United States District Court for the
District of Massachusetts, and more than 45 actions in
the United States District Court for the Eastern District
of Pennsylvania.

The present case concerns 40 of the wrongful death
actions brought in the Eastern District of Pennsylvania
by personal representatives of victims of the crash.[1] The
defendants, petitioners in this Court, moved under
§ 1404 (a) to transfer these actions to the District of
Massachusetts, where it was alleged that most of the wit-
nesses resided and where over 100 other actions are pend-
ing. The District Court granted the motion, holding
that the transfer was justified regardless of whether the
transferred actions would be governed by the laws and
choice-of-law rules of Pennsylvania or of Massachusetts.
204 F. Supp. 426. The District Court also specifically
held that transfer was not precluded by the fact that the
plaintiffs had not qualified under Massachusetts law to
sue as representatives of the decedents. The plaintiffs,
respondents in this Court, sought a writ of mandamus
from the Court of Appeals and successfully contended
that the District Court erred and should vacate its order
of transfer. 309 F. 2d 953. The Court of Appeals held
that a § 1404 (a) transfer could be granted only if at the
time the suits were brought, the plaintiffs had qualified
to sue in Massachusetts, the State of the transferee Dis-
trict Court. The Court of Appeals relied in part upon

---

[1] The plaintiffs are "Pennsylvania fiduciaries representing the
estates of Pennsylvania decedents."

its interpretation of Rule 17 (b) of the Federal Rules of Civil Procedure.[2]

We granted certiorari to review important questions concerning the construction and operation of § 1404 (a). 372 U. S. 964. For reasons to be stated below, we hold that the judgment of the Court of Appeals must be reversed, that both the Court of Appeals and the District Court erred in their fundamental assumptions regarding the state law to be applied to an action transferred under § 1404 (a), and that accordingly the case must be remanded to the District Court.[3]

---

[2] Rule 17 (b), Fed. Rules Civ. Proc., 28 U. S. C.: "Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U. S. C., §§ 754 and 959 (a)."

[3] Although it is clear that this Court has jurisdiction to review the judgment of the Court of Appeals, the Government, a defendant in this case, urges that the judgment below be reversed because mandamus was an improper remedy. However, in *Hoffman* v. *Blaski*, 363 U. S. 335, as the Government concedes, this Court reviewed decisions in § 1404 (a) transfer cases which the Court of Appeals reviewed through exercise of the mandamus power. See also *Norwood* v. *Kirkpatrick*, 349 U. S. 29; *Ex parte Collett*, 337 U. S. 55. Since in our opinion the courts below erred in interpreting the legal limitations upon and criteria for a § 1404 (a) transfer, we find it unnecessary to consider the mandamus contentions advanced by the Government. Cf. *Platt* v. *Minnesota Mining & Mfg. Co., ante,* at 240.

## I. Where the Action "Might Have Been Brought."

Section 1404 (a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice.[4]   Thus, as the Court recognized in *Continental Grain Co.* v. *Barge FBL–585,* 364 U. S. 19, 26, 27, the purpose of the section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ."   To this end it empowers a district court to transfer "any civil action"[5] to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice.   This transfer power is, however, expressly limited by the final clause of § 1404 (a) restricting transfer to those federal districts in which the action "might have been brought."   Although in the present case the plaintiffs were qualified to bring suit as personal representatives under Pennsylvania law (the law of the State of the transferor federal court), the Court of Appeals ruled that the defendants' transfer motion must be denied because at the time the suits were brought in Pennsylvania (the transferor forum) the complainants had not obtained the appointments requisite to initiate such actions in Massachusetts (the transferee forum).

---

[4] See, *e. g., Norwood* v. *Kirkpatrick, supra,* at 32: "When Congress adopted § 1404 (a), it intended to do more than just codify the existing law on *forum non conveniens.* . . . Congress, in writing § 1404 (a), which was an entirely new section, was revising as well as codifying." 1 Moore, Federal Practice (2d ed., 1961), pp. 1751–1758.

[5] See *Ex parte Collett, supra,* and *United States* v. *National City Lines, Inc.,* 337 U. S. 78 (interpreting "any civil action" to include actions governed by special, as well as general, venue provisions).

At the outset, therefore, we must consider whether the incapacity of the plaintiffs at the time they commenced their actions in the transferor forum to sue under the state law of the transferee forum renders the latter forum impermissible under the "might-have-been-brought" limitation.

There is no question concerning the propriety either of venue or of jurisdiction in the District of Massachusetts, the proposed transferee forum.[6] The Court of Appeals conceded that it was "quite likely" that the plaintiffs could have obtained ancillary appointment in Massachusetts but held this legally irrelevant. 309 F. 2d, at 957–958. In concluding that the transfer could not be granted, the Court of Appeals relied upon *Hoffman* v. *Blaski,* 363 U. S. 335, as establishing that "unless the plaintiff *had an unqualified right to bring suit* in the transferee forum at the time he filed his original complaint, transfer to that district is not authorized by § 1404 (a)." 309 F. 2d, at 957. (Emphasis in original.) The court found the analogy to *Hoffman* particularly persuasive because it could "perceive no basis in either logic or policy for making any distinction between the absence of venue in the transferee forum and a prospective plaintiff's lack of capacity to sue there." *Ibid.* In addition, the court held that the transfer must be denied because in actions by personal repre-

---

[6] See 204 F. Supp. 426, 437. Nor is there any question concerning the propriety either of venue or of jurisdiction in the Eastern District of Pennsylvania, the transferor forum. The District Court indicated that one of the cases arising from the Boston Harbor crash had "already been transferred due to improper venue . . . ." *Id.,* at 427, n. 1. The Court of Appeals noted that counsel suggested that two other cases "must eventually be transferred to the district court in Massachusetts since venue in the Eastern District of Pennsylvania is improper." 309 F. 2d 953, at 958. The transfers ordered in these cases were not contested in the Court of Appeals, *ibid.,* and are not involved in the present case. See notes 11, 29, *infra.*

sentatives "Rule 17 (b), Fed.R.Civ.P., requires the district court to refer to the law of the state in which it sits to determine capacity to sue." [7]  *Id.*, at 958.

The defendants contend that the concluding phrase of § 1404 (a)—"where it might have been brought"—refers to those districts in which Congress has provided by its venue statutes that the action "may be brought.". Applying this criterion, the defendants argue that the posture of the case under state law is irrelevant.   They contend that *Hoffman* v. *Blaski, supra,* did not rule that the limitations of state law were relevant to determining where the action "might have been brought" but ruled only that the requirement prohibited transfer where the proposed transferee forum lacked both venue of the action and power to command jurisdiction over the defendants when the suits were originally instituted.   The defendants contend further that the decision below is contrary to the policy underlying *Hoffman,* since this decision effectively enables a plaintiff, simply by failing to proceed in other potential forums and qualify as a personal representative, to restrict and frustrate efforts to have the action transferred to a federal forum which would be far more convenient and appropriate.   Finally, with regard to the conclusion that Rule 17 (b) precludes transfer, the defendants argue that under § 1404 (a) the effect of the Rule, like the existence of different state laws in the transferee forum, is not relevant to a determination of where, as indicated by federal venue laws, the action "might have been brought."   The defendants conclude that the effect of transfer upon potential state-law defenses and upon the state law applied under Rule 17 (b) should instead be considered and assessed with reference to the criterion that the transfer be "in the interest of justice."   See *infra,* pp. 624–626, 640–643.

---

[7] The text of Rule 17 (b) is set forth in note 2, *supra.*

The plaintiffs respond emphasizing that they are "Pennsylvania fiduciaries representing the estates of Pennsylvania decedents." They were not and are not qualified to bring these or related actions in Massachusetts and their lack of capacity would, under Massachusetts law, constitute "an absolute defense." The plaintiffs contend that *Hoffman* v. *Blaski* established that transfer must be denied unless, at the time the action was brought, the complainant had an independent right to institute that action in the transferee forum regardless of the fact that the defendant in seeking transfer might expressly or implicitly agree to venue and jurisdiction in the transferee forum and waive defenses that would have been available only under the law of the transferee State. In addition, the plaintiffs argue, even if the limiting phrase "where-it-might-have-been-brought" relates only to federal venue laws, Rule 17 (b) expressly provides that the capacity of a fiduciary to sue in a United States district court shall be determined "by the law of the state in which the district court is held." The plaintiffs understand the language of the Rule to refer to the law of the State in which the transferee court is held rather than to the law of the State of the transferor court. They conclude that since they "were not qualified to sue in Massachusetts [the State in which the transferee court would be held], they were not qualified to sue in the United States district court in Massachusetts and the District of Massachusetts was not a district in which these actions 'might have been brought.' "

A. In *Hoffman* v. *Blaski* this Court first considered the nature of the limitation imposed by the words "where it might have been brought." The plaintiff opposed the defendant's motion to transfer on the ground that the proposed transferee forum lacked both "venue over the action and ability to command jurisdiction over the . . ."

defendant.[8]  363 U. S., at 337.  The question, as stated by the Court, was "whether a District Court, in which a civil action has been properly brought, is empowered by § 1404 (a) to transfer the action, on the motion of the defendant, to a district in which the plaintiff did not have a *right* to bring it." *Id.*, at 336.  (Emphasis in original.)  The defendant emphasized that "venue, like jurisdiction over the person, may be waived." *Id.*, at 343.  This Court held that, despite the defendant's waivers or consent, a forum which had been improper for both venue and service of process was not a forum where the action "might have been brought." [9]

In the present case the Court of Appeals concluded that transfer could not be granted because here, as in *Hoffman* v. *Blaski,* the plaintiffs did not have an "independent" or "unqualified" right to bring the actions in the transferee

---

[8] In the two cases decided *sub nom. Hoffman* v. *Blaski, supra,* the petitioners conceded "that statutory venue did not exist over either of these actions in the respective transferee districts, and that the respective defendants were not within the reach of the process of the respective transferee courts." *Id.*, at 341.

[9] Two weeks after *Hoffman* the Court decided *Continental Grain Co.* v. *Barge FBL–585,* 364 U. S. 19.  See *infra,* at 622.  In that case a cargo owner, seeking damages from a barge owner, had joined in a single complaint an *in personam* claim against the barge owner and an *in rem* claim against the barge.  The complaint was filed in the Federal District Court in New Orleans.  At that time the barge, or the *res,* was in New Orleans.  The plaintiff-cargo owner opposed a motion to transfer to the District Court in Memphis on the ground that the *in rem* claim could not have been brought in that forum which had only personal jurisdiction over the barge owner at the time the New Orleans suit was brought.  The Court, rejecting this argument, held that for purposes of assessing where the litigation "might have been brought" the *in personam* and *in rem* claims should be practically viewed as a single "civil action" in which the complainant had chosen "an alternative way of bringing the owner into court." *Id.*, at 26.  See Comment, 31 U. of Chi. L. Rev. 373 (1964).

forum.[10]  The propriety of this analogy to *Hoffman* turns, however, on the validity of the assumption that the "where-it-might-have-been-brought" clause refers not only to federal venue statutes but also to the laws applied in the State of the transferee forum.  It must be noted that the instant case, unlike *Hoffman,* involves a motion to transfer to a district in which both venue and jurisdiction are proper.  This difference plainly demonstrates that the Court of Appeals extended the *Hoffman* decision and increased the restrictions on transfers to convenient federal forums.  The issue here is not that presented in *Hoffman* but instead is whether the limiting words of § 1404 (a) prevent a change of venue within the federal system because, under the law of the State of the transferee forum, the plaintiff was not qualified to sue or might otherwise be frustrated or prejudiced in pursuing his action.

We cannot agree that the final clause of § 1404 (a) was intended to restrict the availability of convenient federal forums by referring to state-law rules, such as those concerning capacity to sue, which would have applied if the action had originally been instituted in the transferee federal court.  Several considerations compel this conclusion.  First, if the concluding clause is considered as an independent entity and perused for its plain meaning, it seems clear that the most obvious referents of the words are found in their immediate statutory context.[11]  Sec-

---

[10] A similar rule had been applied in *Felchlin* v. *American Smelting & Refining Co.,* 136 F. Supp. 577 (D. C. S. D. Cal. 1955).

[11] See Note, 60 Yale L. J. 183 (1951).  The analogous provisions of § 1406 (a), which shares the same statutory context, contain a similar phrase: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division *in which it could have been brought."* 28 U. S. C. § 1406 (a).  (Emphasis added.)  See *Goldlawr, Inc.,* v. *Heiman,* 369

tion 1404 (a) was enacted as part of Chapter 87 of Part IV of the Judicial Code of 1948. That Chapter is designated "District Courts; Venue." The Chapter itself is in that Part of the Code dealing generally with "Jurisdiction and Venue." In the immediate Chapter, which includes §§ 1391–1406, the phrase "may be brought" recurs at least 10 times [12] and the phrase "may be prosecuted" at least 8 times.[13] The statutory context is thus persuasive evidence that the "might-have-been-brought" language of § 1404 (a) plainly refers to the similar wording in the related federal statutes and not directly to the laws of the State of the transferee forum.

Secondly, it should be asked whether the purposes of § 1404 (a) warrant a broad or generous construction of the limiting clause. The answer, we think, is quite evident. As MR. JUSTICE BLACK said, speaking for the Court in *Continental Grain Co.* v. *Barge FBL–585,* 364 U. S., at 26: "The idea behind § 1404 (a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." This remedial purpose—the individualized, case-by-case consideration of convenience and fairness—militates against restricting the number of permissible forums within the federal system.[14]

U. S. 463; Hart and Wechsler, The Federal Courts and the Federal System (1953), p. 979; Comment, 30 U. of Chi. L. Rev. 735 (1963).

[12] 28 U. S. C. §§ 1391 (a)(b), 1392 (a)(b), 1393 (b), 1395 (d), 1396, 1397, 1399, 1400 (b).

[13] 28 U. S. C. §§ 1394, 1395 (a)(b)(c)(e), 1401, 1402 (a)(b). Other venue provisions in the same chapter of the Judicial Code use language such as: "may be sued," § 1391 (d); "must be brought," § 1393 (a); "shall be brought," §§ 1398, 1403; and "may be instituted," § 1400 (a).

[14] Note, 76 Harv. L. Rev. 1679, 1680 (1963).

There is no valid reason for reading the words "where it might have been brought" to narrow the range of permissible federal forums beyond those permitted by federal venue statutes which, after all, are generalized attempts to promote the same goals of convenience and fairness.

Finally, in construing § 1404 (a) we should consider whether a suggested interpretation would discriminatorily enable parties opposed to transfer, by means of their own acts or omissions, to prevent a transfer otherwise proper and warranted by convenience and justice. In *Continental Grain Co.* v. *Barge FBL–585, supra,* the plaintiff, having joined in a single complaint both *in rem* and *in personam* damage claims, opposed transfer to a convenient forum on the ground that the *in rem* claim could not have been brought in the transferee forum.[15] In approving the transfer order, this Court observed that failure to adopt a "common-sense approach . . . would practically scuttle the *forum non conveniens* statute so far as admiralty actions are concerned. All a plaintiff would need to do to escape from it entirely would be to bring his action against both the owner and the ship, as was done here." *Id.,* at 24–25. The case at bar presents a similar situation. The Court of Appeals' decision would grant personal representatives bringing wrongful-death actions the power unilaterally to reduce the number of permissible federal forums simply by refraining from qualifying as representatives in States other than the one in which they wished to litigate. The extent of that power is graphically illustrated by the laws of the American jurisdictions, the vast majority of which require that, as a condition of qualifying to bring suit, a foreign executor or representative must obtain ancillary appointment

---

[15] See note 9, *supra.*

or perform some preliminary act.[16] The possibilities thus suggested by the facts of the present case amply demonstrate that the limiting phrase of § 1404 (a) should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just. The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum.

In summary, then, we hold that the words "where it might have been brought" must be construed with reference to the federal laws delimiting the districts in which such an action "may be brought" and not with reference to laws of the transferee State concerning the capacity of fiduciaries to bring suit.

B. The Court of Appeals, in reversing the District Court, relied in part upon Rule 17 (b) of the Federal Rules of Civil Procedure. The relevant portion of the Rule provides that the capacity of personal representatives "to sue or be sued shall be determined by the law of the state in which the district court is held." [17] In our view the "where-it-might-have-been-brought" clause does not refer to this Rule and the effect of the Rule, therefore, raises a separate question. This conclusion does not, however, establish that Rule 17 (b), if applied as interpreted by the Court of Appeals, would not preclude the requested transfer. The reliance placed on Rule 17 (b) necessarily assumes that its language—which is

---

[16] See Note, 17 Rutgers L. Rev. 664, 668 (1963); 52 A. L. R. 2d 1048. The implications of the Court of Appeals' decision are plainly indicated by two subsequent decisions, *Goranson* v. *Capital Airlines, Inc.*, 221 F. Supp. 820 (D. C. E. D. Va.), and *Thompson* v. *Capital Airlines, Inc.*, 220 F. Supp. 140 (D. C. S. D. N. Y.).

[17] The text of Rule 17 (b) is set forth in note 2, *supra*.

not free from ambiguity—requires the application of the law of the State of the transferee district court rather than that of the transferor district court.[18] On this assumption, the defendants in the present case, after a transfer to Massachusetts, would be entitled to raise the defense of incapacity under Massachusetts law and thereby defeat the actions. Thus a § 1404 (a) transfer might result in a prejudicial change in the applicable state law. This possibility makes it apparent, that, although Rule 17 (b) may be irrelevant to a determination of where an action "might have been brought," the effect of the Rule may necessarily render a change of venue against the "interest of justice."

Although the Court of Appeals specifically relied on Rule 17 (b), in our opinion the underlying and fundamental question is whether, in a case such as the present, a change of venue within the federal system is to be accompanied by a change in the applicable state law.[19] Whenever the law of the transferee State significantly differs from that of the transferor State—whether that difference relates to capacity to sue, statutes of limitations, or "substantive" rules of liability—it becomes nec-

---

[18] See the rationale adopted in *Felchlin* v. *American Smelting & Refining Co.*, 136 F. Supp. 577 (relied upon by the Court of Appeals in the present case, 309 F. 2d, at 957).

[19] It has been observed that in the present case "the [Court of Appeals'] foray into Massachusetts substantive law need never have been undertaken had the court been confident that the transferee forum would treat the question of qualification as governed by the doctrine . . . that the transferee court should apply the law of the transferor forum." Note, 76 Harv. L. Rev. 1679, 1681 (1963). Similarly, it has been noted that if under the Court of Appeals decision "there is no significant difference between venue-jurisdiction and capacity, there may be no adequate difference between capacity and a host of other defensive bars that may foreseeably subject a plaintiff to dismissal." Note, 17 Rutgers L. Rev. 664, 666 (1963); cf. Comment, 51 Col. L. Rev. 762, 771 (1951).

essary to consider what bearing a change of venue, if accompanied by a change in state law, would have on "the interest of justice." .This fundamental question underlies the problem of the interpretation of the words of Rule 17 (b) and requires a determination of whether the existence of differing state laws would necessarily render a transfer against "the interest of justice." In view of the facts of this case and their bearing on this basic question, we must consider first, insofar as is relevant, the relationship between a change of venue under § 1404 (a) and the applicable state law.

## II. "THE INTEREST OF JUSTICE": EFFECT OF A CHANGE OF VENUE UPON APPLICABLE STATE LAW.

A. The plaintiffs contend that the change of venue ordered by the District Court was necessarily precluded by the likelihood that it would be accompanied by a highly prejudicial change in the applicable state law. The prejudice alleged is not limited to that which might flow from the Massachusetts laws governing capacity to sue. Indeed, the plaintiffs emphasize the likelihood that the defendants' "ultimate reason for seeking transfer is to move to a forum where recoveries for wrongful death are restricted to sharply limited punitive damages rather than compensation for the loss suffered." [20] It is argued that Pennsylvania choice-of-law rules would result in the application of laws substantially different from those that would be applied by courts sitting in Massachusetts. The District Court held, however, that transfer could be ordered regardless of the state laws and choice-of-law rules to be applied in the transferee forum and regardless

---

[20] See Cavers, Change in Choice-of-Law Thinking and Its Bearing on the Klaxon Problem, in A. L. I., Study of the Division of Jurisdiction between State and Federal Courts (Tent. Draft No. 1, 1963), pp. 154, 193.

of the possibility that the laws applicable in the transferor State would significantly differ from those applicable in the transferee State. This ruling assumed that transfer to a more convenient forum may be granted on a defendant's motion even though that transfer would seriously prejudice the plaintiff's legal claim. If this assumption is valid, the plaintiffs argue, transfer is necessarily precluded—regardless of convenience and other considerations—as against the "interest of justice" in dealing with plaintiffs who have either exercised the venue privilege conferred by federal statutes, or had their cases removed from state into federal court.

If conflict of laws rules are laid aside, it is clear that Massachusetts (the State of the transferee court) and Pennsylvania (the State of the transferor court) have significantly different laws concerning recovery for wrongful death. The Massachusetts Death Act provides that one who negligently causes the death of another "shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability . . . ." Mass. Ann. Laws, c. 229, § 2 (Supp. 1961). By contrast, under Pennsylvania law the recovery of damages (1) is based upon the more common principle of compensation for losses rather than upon the degree of the tortfeasor's culpability and (2) is not limited to $20,000.[21] Some of the defendants urge, however, that

[21] In *Massachusetts Bonding & Ins. Co.* v. *United States,* 352 U. S. 128, this Court reviewed the relationship between the provisions of .the Federal Tort Claims Act and the principles of the Massachusetts Death Act. Only two States, Alabama and Massachusetts, "award only punitive damages for wrongful deaths." *Id.,* at 130–131. The Court stated: "The assessment of damages with reference to the degree of culpability of the tort-feasor, rather than with reference to the amount of pecuniary loss suffered by the next of kin, makes those damages punitive in nature. That has been the

these differences are irrelevant to the present case because Pennsylvania state courts, applying their own choice of law rules, would require that the Massachusetts Death Act be applied in its entirety, including its culpability principle and damage limitation.[22]  It follows that a federal district court sitting in Pennsylvania, and referring, as is required by *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U. S. 487, to Pennsylvania choice-of-law rules, would therefore be applying the same substantive rules as would a state or federal court in Massachusetts if the actions had been commenced there.  This argument highlights the fact that the most convenient forum is frequently the place where the cause of action arose and that the conflict-of-laws rules of other States may often refer to the substantive rules of the more convenient forum.[23]  The plaintiffs, however, point to the decision of the New York Court of Appeals in *Kilberg* v. *Northeast Airlines, Inc.*, 9 N. Y. 2d 34, 211 N. Y. S. 2d 133, 172 N. E. 2d 526, and the decision of the Court of Appeals for the Second Circuit in *Pearson* v. *Northeast Airlines, Inc.*, 309 F. 2d 553, cert. denied, 372 U. S. 912, as indicating that Pennsylvania, in light of its laws and policies,

---

holding of the Supreme Judicial Court of Massachusetts. . . . The standard of liability under the Massachusetts Death Act is punitive— *i. e.*, 'with reference to the degree' of culpability—not compensatory. . . . There is nothing in the Massachusetts law which measures the damages by 'pecuniary injuries.' " *Id.*, at 129, 132, 133. *E. g., Beatty* v. *Fox*, 328 Mass. 216, 102 N. E. 2d 781; *Macchiaroli* v. *Howell*, 294 Mass. 144, 200 N. E. 905; *Boott Mills* v. *Boston & M. R. Co.*, 218 Mass. 582, 106 N. E. 680; *Bagley* v. *Small*, 92 N. H. 107, 26 A. 2d 23.  Compare 12 Purdon's Pa. Stat. Ann. §§ 1601–1604; *Spangler* v. *Helm's New York-Pittsburgh Motor Express*, 396 Pa. 482, 153 A. 2d 490; cf. *Thirteenth & Fifteenth Street Passenger R. Co.* v. *Boudrou*, 92 Pa. 475, 481–482.

[22] Cf. *Goranson* v. *Kloeb*, 308 F. 2d 655.

[23] See Blume, Place of Trial of Civil Cases, 48 Mich L. Rev. 1, 37 (1949).

might not apply the culpability and damage limitation aspects of the Massachusetts statute. The District Court, in ordering that the actions be transferred, found it both undesirable and unnecessary to rule on the question of whether Pennsylvania courts would accept the right of action provided by the Massachusetts statute while at the same time denying enforcement of the Massachusetts measure of recovery.[24] 204 F. Supp., at 433–436. The District Court found it undesirable to resolve this question because the Pennsylvania courts had not yet considered it and because they would, in view of similar pending cases, soon have an opportunity to do so. The District Court, being of the opinion that the District of Massachusetts was in any event a more convenient place for trial, reasoned that the transfer should be granted forthwith and that the transferee court could proceed to the trial of the actions and postpone consideration of the Pennsylvania choice-of-law rule as to damages until a later time at which the Pennsylvania decisions might well have supplied useful guidance. Fundamentally, however, the transferring District Court assumed that the Pennsylvania choice of law rule was irrelevant because the transfer would be permissible and justified even if accompanied by a significant change of law.

The possibilities suggested by the plaintiffs' argument illustrate the difficulties that would arise if a change of venue, granted at the motion of a defendant, were to result in a change of law. Although in the present case the contentions concern rules relating to capacity to sue and damages, in other cases the transferee forum might have a shorter statute of limitations or might refuse to

---

[24] The defendants, rejecting the view adopted by the Second Circuit in *Pearson* v. *Northeast Airlines, Inc.,* 309 F. 2d 553, contend that the Full Faith and Credit Clause requires Pennsylvania courts to follow all the terms of the Massachusetts Death Act. We intimate no view concerning this contention.

adjudicate a claim which would have been actionable in the transferor State. In such cases a defendant's motion to transfer could be tantamount to a motion to dismiss.[25] In light, therefore, of this background and the facts of the present case, we need not and do not consider the merits of the contentions concerning the meaning and proper application of Pennsylvania's laws and choice of law rules. For present purposes it is enough that the potential prejudice to the plaintiffs is so substantial as to require review of the assumption that a change of state law would be a permissible result of transfer under § 1404 (a).

The decisions of the lower federal courts, taken as a whole, reveal that courts construing § 1404 (a) have been strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws.[26] Although the federal courts have

---

[25] See, e. g., Note, 64 Harv. L. Rev. 1347, 1354–1355 (1951), which assumes that changes of venue might be accompanied by changes of law and concludes that: "To make the transfer purely for reasons of convenience, without considering the difference in law, would amount to directing a verdict on the merits without examining them."

[26] See H. L. Green Co., Inc., v. MacMahon, 312 F. 2d 650; Benton v. Vinson, Elkins, Weems & Searls, 255 F. 2d 299; Headrick v. Atchison, T. & S. F. R. Co., 182 F. 2d 305. See also, e. g., King Bros. Productions, Inc., v. RKO Teleradio Pictures, Inc., 208 F. Supp. 271; Gomez v. The SS Dorothy, 183 F. Supp. 499; Hargrove v. Louisville & N. R. Co., 153 F. Supp. 681; Heaton v. Southern R. Co., 119 F. Supp. 658; Frechoux v. Lykes Bros. S. S. Co., Inc., 118 F. Supp. 234; Greve v. Gibraltar Enterprises, Inc., 85 F. Supp. 410; cf. Curry v. States Marine Corp. of Delaware, 118 F. Supp. 234. But cf. Goranson v. Kloeb, 308 F. 2d 655 (transfer granted because, even assuming transferee law applied, the substantive rules would be identical); Felchlin v. American Smelting & Refining Co., 136 F. Supp. 577 (see note 18, supra); Curry v. States Marine Corp. of Delaware, supra (transfer denied upon failure of parties to stipulate that transferor statute of limitations would apply). See also authorities cited, note 39, infra.

utilized a variety of doctrines in order to approve a desirable transfer and at the same time protect the plaintiffs,[27] the prevailing view in the lower federal courts is that adopted by the Court of Appeals for the Tenth Circuit in 1950, only two years after the enactment of § 1404 (a), in *Headrick* v. *Atchison, T. & S. F. R. Co.*, 182 F. 2d 305, and further developed in the recent decision of the Court of Appeals for the Second Circuit in *H. L. Green Co., Inc.*, v. *MacMahon*, 312 F. 2d 650. These cases have adopted and applied a general interpretative principle which we believe faithfully reflects the purposes underlying § 1404 (a).

In *Headrick* v. *Atchison, T. & S. F. R. Co., supra,* the plaintiff, a Missouri citizen, had been injured in an accident in California. He contended that responsibility lay with the defendant railroad, a Kansas corporation doing business in a number of States. The plaintiff's Missouri attorney entered into settlement negotiations with the defendant but "these negotiations continued until after an action was barred by the statute of limitations of California; [and] thereafter the attorney was advised that the defendant would rely upon such statute as a bar to the plaintiff's claim . . . ." *Id.,* at 307. The plaintiff thereupon filed his action in a state court in New Mexico, where the defendant was amenable to process and where, by virtue of a longer statute of limitations, suit was not barred. The defendant then removed the case to the United States District Court for the District of New Mexico on the ground of diversity. In the District Court the

---

[27] Frequently courts, dealing with a defendant's motion to transfer, have relied at least in part upon a transfer-on-condition or estoppel approach to grant transfer and protect the plaintiff. *E. g., Frechoux* v. *Lykes Bros. S. S. Co., supra; Greve* v. *Gibraltar Enterprises, Inc., supra; Crawford* v. *The SS Shirley Lykes,* 148 F. Supp. 958; *May* v. *The Steel Navigator,* 152 F. Supp. 254; *Hokanson* v. *Helene Curtis Industries, Inc.,* 177 F. Supp. 701.

defendant moved for dismissal "or in the alternative to transfer the cause to the United States District Court of California, Northern Division, pursuant to . . . § 1404 (a)." *Ibid.* The court denied the transfer, indicating "that it would have transferred the action to California had the statute of limitations of that state not run, but since it had, a transfer would be futile and unavailing." *Id.*, at 308. The Court of Appeals reversed, observing first that the plaintiff:

> "had a legal right to select any forum where the defendant was amenable to process and no contention is made here that the case was not properly brought in the New Mexico state court. It is conceded that the action is not barred by the New Mexico statute. Had the case been tried in the New Mexico state court, the procedural laws of New Mexico including the statutes of limitations would be applicable. . . . [I]n removal cases the Federal Court must apply the state law and the state policy." *Id.*, at 309.

From this it followed, the court concluded, that:

> "Upon removal to the Federal Court in New Mexico, the case would remain a New Mexico case controlled by the law and policy of that state, and if § 1404 (a) is applicable and a transfer to the California court is ordered for the convenience of the parties the witnesses and in the interests of justice, there is no logical reason why it should not remain a New Mexico case still controlled by the law and policy of that state." *Id.*, at 309–310.

Although the cases following the Headrick principle have usually involved a similar problem concerning statutes of limitations, the Court of Appeals for the Second Circuit plainly indicated in *H. L. Green Co., Inc.,* v. *Mac-*

*Mahon, supra,* that the *Headrick* rule was equally applicable to other laws of the transferor State, including choice-of-law rules, which might affect the outcome of the litigation. The plaintiff in that case brought an action under the Securities Exchange Act in the District Court for the Southern District of New York and there moved to amend his complaint to add a common-law claim arising under New York law. Without ruling on the motion to add to the complaint, the District Court granted a motion by the defendant to transfer to the Southern District of Alabama pursuant to § 1404 (a). The plaintiff objected to transfer not only because the Alabama statute of limitations would be unfavorable but also because prejudice would result from applying Alabama law "to the common law claim [which the plaintiff] has moved to join with the statutory claim." 312 F. 2d, at 652. The Court of Appeals rejected these contentions:

> "Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location. Headrick v. Atchison, T. & S. F. Ry. Co., 182 F. 2d 305 . . . ." *Id.,* at 652–653.

The Court made the import of this rule plain by expressly declaring first that the transferee court sitting in Alabama should apply New York law in ruling on the motion to add to the complaint and, secondly, that if the complaint were thus amended, the transferee court "will apply New York law (including any relevant New York choice-of-law rules)." *Id.,* at 654.

Of course these cases allow plaintiffs to retain whatever advantages may flow from the state laws of the forum they have initially selected. There is nothing, however, in the language or policy of § 1404 (a) to jus-

tify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue. In this regard the transfer provisions of § 1404 (a) may be compared with those of § 1406 (a).[28] Although both sections were broadly designed to allow transfer instead of dismissal, § 1406 (a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404 (a) operates on the premise that the plaintiff has properly exercised his venue privilege.[29] This distinction underlines the fact that Congress, in passing § 1404 (a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one.[30]

---

[28] See note 11, *supra*.

[29] In *Viaggio* v. *Field*, 177 F. Supp. 643, 648, the District Court suggested that cases where defendants sought transfer under § 1404 (a) were the "converse of the situation . . . in the instant case [under § 1406 (a)] where it is the plaintiff who brought the suit incorrectly in this court and is now asking to have it transferred to another court and hopes thereby to obtain an advantage with respect to [the transferee state's statute of] limitations." See *Skilling* v. *Funk Aircraft Co.*, 173 F. Supp. 939; Comment, 61 Col. L. Rev. 902, 914 (1961); Comment, 30 U. of Chi. L. Rev. 735, 745, n. 68 (1963); Comment, 1962 Wis. L. Rev. 342, 354. Cf. *Goldlawr, Inc.*, v. *Heiman*, 369 U. S., at 466–467. See note 6, *supra*.

[30] See *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501, 507: "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy." The Revisor's Note to § 1404 (a) states that it "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see *Baltimore & Ohio R. Co.* v. *Kepner*, 1941, 62 S. Ct. 6, 314 U. S. 44, 86

In considering the Judicial Code, Congress was particularly aware of the need for provisions to mitigate abuses stemming from broad federal venue provisions. The venue provision of the Federal Employers' Liability Act was the subject of special concern.[31] However, while the Judicial Code was pending, Congress considered and rejected the Jennings bill which, as the Court stated in *Ex parte Collett,* 337 U. S. 55, 64, "was far more drastic than § 1404 (a)," and which "would in large part have repealed [the venue section] of the Liability Act" by severely delimiting the permissible forums.[32] This legislative background supports the view that § 1404 (a) was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court. The legislative

---

L. Ed. 28, which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so." Revision of Title 28, United States Code, Report of the House Committee on Revision of the Laws on H. R. 7124, 79th Cong., 2d Sess., p. A127.

[31] See *Ex parte Collett, supra,* at 68–69; Revisor's Note following § 1404 (a) (note 30, *supra*); Moore, Commentary on the U. S. Judicial Code (1949), p. 206.

[32] In *Ex parte Collett, supra,* at 60, the Court observed: "Section 6 of the Liability Act defines the proper forum; § 1404 (a) of the Code deals with the right to transfer an action properly brought. *The two sections deal with two separate and distinct problems.* Section 1404 (a) does not limit or otherwise modify any right granted in § 6 of the Liability Act or elsewhere to bring suit in a particular district. An action may still be brought in any court, state or federal, in which it might have been brought previously." (Emphasis added.)

history of § 1404 (a) certainly does not justify the rather startling conclusion that one might "get a change of law as a bonus for a change of venue." [33]   Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § 1404 (a).   If a change of law were in the offing, the parties might well regard the section primarily as a forum-shopping instrument.[34]   And, more importantly, courts would at least be reluctant to grant transfers, despite considerations of convenience, if to do so might conceivably prejudice the claim of a plaintiff who had initially selected a permissible forum.[35]   We believe, therefore, that both the history and purposes of § 1404 (a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally

---

[33] Mr. Justice Jackson, dissenting in *Wells* v. *Simonds Abrasive Co.*, 345 U. S. 514, 522, expressed dismay at what he viewed as such a suggestion: "Are we then to understand that parties may get a change of law as a bonus for a change of venue?  If the law of the forum in which the case is tried is to be the sole test of substantive law, burden of proof, contributory negligence, measure of damages, limitations, admission of evidence, conflict of laws and other doctrines, . . . then shopping for a favorable law via the [transfer] route opens up possibilities of conflict, confusion and injustice greater than anything *Swift* v. *Tyson*, 16 Pet. 1, ever held."

[34] See Currie, Change of Venue and the Conflict of Laws, 22 U. of Chi. L. Rev. 405, 441 (1955): "If it should be established as a rule of thumb that the transferee court is to apply the law of the state in which it sits, every case in which there is a difference of law between the original and the transferee state would become a game of chess, with Section 1404 (a) authorizing a knight's move; and nothing would be certain except that the parties would land on a square of a different color."

[35] See, *e. g.*, Note, 64 Harv. L. Rev. 1347, 1355 (1951): "It would seem best, therefore, not to transfer at all where the law which would be applied in the transferee forum would be materially different from that applied by the transferring court."

intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms.[36]

Although we deal here with a congressional statute apportioning the business of the federal courts, our interpretation of that statute fully accords with and is supported by the policy underlying *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. This Court has often formulated the *Erie* doctrine by stating that it establishes "the principle of uniformity within a state," *Klaxon Co.* v. *Stentor Elec. Mfg. Co., Inc.,* 313 U. S. 487, 496, and declaring that federal courts in diversity of citizenship cases are to apply the laws "of the states in which they sit," *Griffin* v. *McCoach,* 313 U. S. 498, 503.[37] A superficial reading of these formulations might suggest that a transferee federal court should apply the law of the State in which it

---

[36] For recent proposals, see A. L. I., Study of the Division of Jurisdiction between State and Federal Courts (Tent. Draft No. 1, 1963), §§ 1306, 1307, 1308. The commentary on the proposed § 1306 notes that, where the defendant seeks transfer, the section would provide "that the transferee court shall apply the rules which the transferor court would have been bound to apply. . . . The effect is to give the plaintiff the benefit which traditionally he has had in the selection of a forum with favorable choice-of-law rules. . . . It may be thought undesirable to let the plaintiff reap a choice-of-law benefit from the deliberate selection of an inconvenient forum. In a sense this is so, but the alternatives seem even more undesirable. If the rules of the State where the transferee district is located were to control, the judge exercising his discretion upon a motion for transfer might well make a ruling decisive of the merits of the case. Whether he should simply decide the appropriate place for trial, letting the choice-of-law bonus fall as it may, or include in his consideration of 'the interest of justice' the 'just' choice-of-law rule, the result is unfortunate. . . ." *Id.,* at 65–66.

[37] See also, *e. g., Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108 ("a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State . . .").

sits rather than the law of the transferor State. Such a reading, however, directly contradicts the fundamental *Erie* doctrine which the quoted formulations were designed to express. As this Court said in *Guaranty Trust Co. v. York,* 326 U. S. 99, 109:

> "*Erie R. Co.* v. *Tompkins* was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. . . . The nub of the policy that underlies *Erie R. Co.* v. *Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result."

Applying this analysis to § 1404 (a), we should ensure that the "accident" of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed. This purpose would be defeated in cases such as the present if nonresident defendants, properly subjected to suit in the transferor State (Pennsylvania), could invoke § 1404 (a) to gain the benefits of the laws of another jurisdiction (Massachusetts). What *Erie* and the cases following it have sought was an identity or uniformity between federal and state courts; [38] and the fact that in most instances this could be achieved by directing federal courts to apply the laws of the States "in which they

---

[38] In *Klaxon Co.* v. *Stentor Elec. Mfg. Co., Inc.,* 313 U. S. 487, 496, the Court observed that: "Whatever lack of uniformity [the *Erie* doctrine] may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors." See note 36, *supra.*

sit" should not obscure that, in applying the same reasoning to § 1404 (a), the critical identity to be maintained is between the federal district court which decides the case and the courts of the State in which the action was filed.[39]

We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally should be, with respect to state law, but a change of courtrooms.[40]

We, therefore, reject the plaintiffs' contention that the transfer was necessarily precluded by the likelihood that a prejudicial change of law would result. In so ruling, however, we do not and need not consider whether in all cases § 1404 (a) would require the application of the law of the transferor, as opposed to the transferee, State.[41]

_____

[39] See cases cited, notes 26–27, *supra*. See 1 Moore, *supra*, at 1772–1777; Currie, Change of Venue and the Conflict of Laws, 22 U. of Chi. L. Rev. 405, 410–413, 438–439 (1955); Currie, Change of Venue and the Conflict of Laws: A Retraction, 27 U. of Chi. L. Rev. 341 (1960); Note, 60 Yale L. J. 537 (1951). But see Kaufman, Observations on Transfers under § 1404 (a) of the New Judicial Code, 10 F. R. D. 595, 601 (1951); Note, 64 Harv. L. Rev. 1347, 1354–1355 (1951); cf. Note, 35 Cornell L. Q. 459, 462, 464 (1950).

[40] Of course the transferee District Court may apply its own rules governing the conduct and dispatch of cases in its court. We are only concerned here with those state laws of the transferor State which would significantly affect the outcome of the case.

[41] We do not suggest that the application of transferor state law is free from constitutional limitations. See, *e. g., Watson* v. *Employers Liability Assurance Corp., Ltd.,* 348 U. S. 66; *Hughes* v. *Fetter,* 341 U. S. 609; *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n,* 306 U. S. 493; *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532; *Home Ins. Co.* v. *Dick,* 281 U. S. 397.

We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404 (a)[42] or if it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*.[43]

B. It is in light of the foregoing analysis that we must consider the interpretation of Rule 17 (b) of the Federal Rules of Civil Procedure and the relationship between that Rule and the laws applicable following a § 1404 (a) transfer.   As indicated, *supra*, at 619, the plaintiffs contend that transfer cannot be granted because, although they are fully qualified as personal representatives to sue in courts in Pennsylvania, they lack the qualifications necessary to sue in Massachusetts.   Rule 17 (b) provides that for such personal representatives "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." [44]   The question arising here is whether the Court of Appeals was correct in assuming that, in the context of a § 1404 (a) transfer between district courts, the language of the Rule referred to the law of the State in which the transferee district court is held, rather than to the law of the State of the transferor district court.

The plaintiffs, arguing that Rule 17 (b) refers only to the transferee district court, suggest that their interpre-

---

[42] Cf. note 29, *supra*.

[43] Compare Currie, Change of Venue and the Conflict of Laws: A Retraction, 27 U. of Chi. L. Rev., at 348 (1960); with Note, 60 Yale L. J. 537, 539–541 (1951).   In *Parsons* v. *Chesapeake & O. R. Co.*, 375 U. S. 71, involving a suit arising under the Federal Employers' Liability Act, the Court ruled in a *per curiam* opinion that: "a prior state court dismissal on the ground of *forum non conveniens* can never serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under § 1404 (a)." *Id.*, at 73–74.

[44] The text of Rule 17 (b) is set forth in note 2, *supra*.

tation is necessary to protect the interest of States in controlling the qualifications of foreign fiduciaries. The plaintiffs state that the vast majority of American jurisdictions permit only locally qualified foreign representatives because safeguards are needed "to protect local citizens who are potential defendants from suits by more than one fiduciary purporting to represent the same decedent and protect all persons from losses caused by the actions of irresponsible out-of-state fiduciaries." These considerations do not, however, support the plaintiffs' interpretation of Rule 17 (b).[45] In the present case, for example, it is conceded that the plaintiffs are qualified as personal representatives under the laws of the transferor State (Pennsylvania). It seems clear that the defendants, who are seeking transfer to another jurisdiction, will be equitably protected if Rule 17 (b) is interpreted to refer to the laws of the transferor State (Pennsylvania). It would be ironic if Rule 17 (b) were construed so that these plaintiffs could defeat transfer by arguing that the defendants would receive inadequate protection against "foreign" fiduciaries.

---

[45] The Court of Appeals, referring to Rule 17 (b), observed: "That most jurisdictions do not permit foreign personal representatives to bring suit in their courts as a matter of right is a well known rule of law, and we cannot presume that Congress intended to alter state policy to the extent of permitting transfer of such suits to the federal courts sitting in those states." 309 F. 2d, at 958. This assumes that it is consistent with the purposes of Rule 17 (b) that the governing or prevailing "state policy" be the policy of the transferee State rather than that of the transferor State. Since, however, the actions when originally instituted were subject to the transferor State's laws, it is misleading to suggest that the continued application of those laws would "alter" state policy. To the contrary, if the plaintiffs have selected a proper state forum and have qualified therein as personal representatives, the policy of that State would be "altered" if as a result of the defendants' motion to transfer under § 1404 (a) the plaintiffs lost their status as qualified representatives.

We think it is clear that the Rule's reference to the State "in which the district court is held" was intended to achieve the same basic uniformity between state and federal courts as was intended by the decisions which have formulated the *Erie* policy in terms of requiring federal courts to apply the laws of the States "in which they sit." [46] See *supra,* at 637–639. The plaintiffs' argument assumes,[47] incorrectly we think, that the critical phrase— "in which the district court is held"—carries a plain meaning which governs even in the case of a § 1404 (a) transfer involving two district courts sitting in different States. It should be remembered, however, that this phrase, like those which were formulated to express the *Erie* doctrine, was employed long before the enactment of a § 1404 (a) provision for transfer within the federal system.[48] We believe that Rule 17 (b) was intended to work an accommodation of interests within our federal system and that in interpreting it in new contexts we should look to its guiding policy and keep it "free from entanglements with analytical or terminological niceties." Cf. *Guaranty Trust Co.* v. *York,* 326 U. S., at 110.

Since in this case the transferee district court must under § 1404 (a) apply the laws of the State of the transferor district court, it follows in our view that Rule 17 (b) must be interpreted similarly so that the capacity to sue will also be governed by the laws of the transferor State. Where a § 1404 (a) transfer is thus held not to effect a change of law but essentially only to authorize a change of courtrooms, the reference in Rule 17 (b) to the

---

[46] Cf. Note, 62 Harv. L. Rev. 1030, 1037–1041 (1949).

[47] See *Felchlin* v. *American Smelting & Refining Co.,* 136 F. Supp. 577, 581–582 (note 18, *supra*).

[48] The relevant provisions of Rule 17 (b) were adopted by this Court and transmitted to Congress on December 20, 1937. See 308 U. S. 649, 685. Section 1404 (a) was first enacted in the Judicial Code of 1948.

law of the State "in which the district court is held" should be applied in a corresponding manner so that it will refer to the district court which sits in the State that will generally be the source of applicable laws. We conclude, therefore, that the Court of Appeals misconceived the meaning and application of Rule 17 (b) and erred in holding that it required the denial of the § 1404 (a) transfer.

### III. APPLICABLE LAW: EFFECT ON THE CONVENIENCE OF PARTIES AND WITNESSES.

The holding that a § 1404 (a) transfer would not alter the state law to be applied does not dispose of the question of whether the proposed transfer can be justified when measured against the relevant criteria of convenience and fairness. Though the answer to this question does not follow automatically from the determination that the transferred actions will carry with them the transferor's laws, that determination nevertheless may make the transfer more—or less—practical and desirable. The matters to be weighed in assessing convenience and fairness are pervasively shaped by the contours of the applicable laws. The legal rules obviously govern what facts will be relevant and irrelevant, what witnesses may be heard, what evidence will be most vital, and so on. Not only do the rules thus affect the convenience of a given place of trial but they also bear on considerations such as judicial familiarity with the governing laws and the relative ease and practicality of trying the cases in the alternative forums.

In the present case the District Court held that the requested transfer could and should be granted regardless of whether the laws of the transferor State or of the transferee State were to be applied. 204 F. Supp., at 433–436. The court based its ruling on a general finding that transfer to Massachusetts would be sufficiently convenient and

fair under the laws of either Pennsylvania or Massachusetts. We do not attempt to review this general conclusion or to reassess the discretion that was exercised. We do conclude, however, that the District Court in assuming that the transferee court would be free to determine which State's laws were to be applied, overlooked or did not adequately consider several criteria or factors the relevance of which is made more apparent when it is recognized that even after transfer the laws of the transferor State will continue to apply.

It is apparent that the desirability of transfer might be significantly affected if Pennsylvania courts decided that, in actions such as the present, they would recognize the cause of action based on the Massachusetts Death Act but would not apply that statute's culpability principle and damage limitation. In regard to this possibility it is relevant to note that the District Court in transferring these actions generally assumed that transfer to Massachusetts would facilitate the consolidation of these cases with those now pending in the Massachusetts District Court and that, as a result, transfer would be accompanied by the full benefits of consolidation and uniformity of result. 204 F. Supp., at 431–432. Since, however, Pennsylvania laws would govern the trial of the transferred cases, insofar as those laws may be significantly different from the laws governing the cases already pending in Massachusetts, the feasibility of consolidation and the benefits therefrom may be substantially altered. Moreover, if the transferred actions would not be subject to the Massachusetts culpability and damage limitation provisions, then the plaintiffs might find a relatively greater need for compensatory damage witnesses to testify with regard to the economic losses suffered by individuals. It is possible that such a difference in damage rules could make the plaintiffs relatively more dependent upon witnesses more conveniently located for a trial in Penn-

sylvania. In addition, it has long been recognized that: "There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 509. Thus, to the extent that Pennsylvania laws are difficult or unclear and might not defer to Massachusetts laws, it may be advantageous to retain the actions in Pennsylvania where the judges possess a more ready familiarity with the local laws.

If, on the other hand, Pennsylvania courts would apply the Massachusetts Death Act in its entirety, these same factors might well weigh quite differently. Consolidation of the transferred cases with those now pending in Massachusetts might be freed from any potential difficulties and rendered more desirable. The plaintiffs' need for witnesses residing in Pennsylvania might be significantly reduced. And, of course, the trial would be held in the State in which the causes of action arose and in which the federal judges are more familiar with the governing laws.

In pointing to these considerations, we are fully aware that the District Court concluded that the relevant Pennsylvania law was unsettled, that its determination involved difficult questions, and that in the near future Pennsylvania courts might provide guidance.[49] We think that this uncertainty, however, should itself have been considered as a factor bearing on the desirability of transfer. Section 1404 (a) provides for transfer to a more

---

[49] 204 F. Supp., at 435 and n. 20. The District Court opinion was filed in April 1962. The defendants allege that a subsequent Pennsylvania decision, *Griffith* v. *United Air Lines, Inc.* (Pa. C. P., Phila. Cty., June Term, 1962, No. 2013), indicates that Pennsylvania courts would accept and apply the Massachusetts Death Act in its entirety. Of course we intimate no view with respect to this contention.

convenient forum, not to a forum likely to prove equally convenient or inconvenient. We do not suggest that elements of uncertainty in transferor state law would alone justify a denial of transfer; but we do think that the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer.

We have not singled out the above criteria for the purpose of suggesting either that they are of controlling importance or that the criteria actually relied upon by the District Court were improper. We have concluded, however, that the District Court ignored certain considerations which might well have been more clearly appraised and might have been considered controlling had not that court assumed that even after transfer to Massachusetts the transferee District Court would be free to decide that the law of its State might apply. It is appropriate, therefore, to reverse the judgment of the Court of Appeals and to remand to the District Court to reconsider the motion to transfer.

Accordingly, the judgment of the Court of Appeals for the Third Circuit is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK concurs in the reversal substantially for the reasons set forth in the opinion of the Court, but he believes that, under the circumstances shown in the opinion, this Court should now hold it was error to order these actions transferred to the District of Massachusetts.